IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| TERRENCE WILLIAMS, | * |
| Plaintiff, | * |
| v. | * |
|  | *   Civil No. 25-1190-BAH |
| CELLO PARTNERSHIP D/B/A VERIZON WIRELESS, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Terrence Williams ("Williams"), proceeding pro se, brought suit against Defendant Cellco[1] Partnership d/b/a Verizon Wireless ("Verizon") alleging several claims arising from the alleged imposition of improper charges related to Williams' Verizon Wireless and Fios accounts. ECF 1, at 2–3. Pending before the Court is Verizon's motion to dismiss or, alternatively, to stay and compel arbitration, ECF 6, and Williams' motion for leave to file an amended complaint, ECF 17. Verizon's motion includes a memorandum of law, and both motions include exhibits.[2] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Verizon's motion is **GRANTED** in part and **DENIED** in part, and Williams' motion is **DENIED**.

---

[1] Williams erroneously filed his complaint against "Cello" Partnership instead of "Cellco" Partnership. ECF 6, at 1. The Court will direct the Clerk to correct the defendant's name on the docket to "Cellco Partnership d/b/a Verizon Wireless."

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

## I. BACKGROUND

Williams alleges that in August of 2018, he and Verizon "entered into a settlement agreement concerning multiple Verizon accounts, under which Verizon agreed to mark accounts as paid in full and update Plaintiff's credit reporting accordingly." ECF 1, at 2 ¶ 6. He then "maintained a Verizon Fios account until April of 2021, when he was wrongfully forced out of his residence." *Id.* ¶ 7. He alleges that "Verizon continued to bill Plaintiff for the Fios service at that address after he vacated, despite being informed of his departure." *Id.* Then, in April of 2023, he "opened a new Verizon Wireless account." *Id.* ¶ 10; ECF 6-1 (declaration of Joseph Ninete), at 2 ¶ 4 ("In or around April 2023 . . . Williams established a Verizon Wireless account."). He "added a line of service to his account and entered into a device payment agreement" for an iPhone 14 Pro Max, and later "added another line of service and entered into a device purchase plan for an Apple Watch Ultra." ECF 6-1, at 2 ¶¶ 5–6. In connection with the purchase of the iPhone and Apple Watch, Williams executed two receipts affirming: "I have read and agree to the Verizon Wireless Customer Agreement and Verizon Privacy Policy, including settlement of dispute by arbitration instead of jury trial." ECF 6-2, at 13 (iPhone receipt), at 17 (Apple Watch receipt). The customer agreement in force in April of 2023 included the following arbitration clause in bold, capitalized, shaded font:

> **HOW DO I RESOLVE DISPUTES WITH VERIZON? ... YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT AS DISCUSSED BELOW. YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. WHILE THE PROCEDURES IN ARBITRATION MAY BE DIFFERENT, AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD ... WE ALSO BOTH AGREE THAT: (1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES OR AS SPECIFICALLY NOTED BELOW, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT, INCLUDING THE**

> VALIDITY, ENFORCEABILITY, OR SCOPE OF ANY PORTION OF THIS AGREEMENT (INCLUDING THE AGREEMENT TO ARBITRATE), OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US, OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES, OR FROM OUR EFFORTS TO COLLECT AMOUNTS YOU MAY OWE US FOR SUCH PRODUCTS OR SERVICES, INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") AS EXPLAINED BELOW IN PARAGRAPH 2.
>
> . . .
>
> (2) UNLESS YOU AND VERIZON AGREE OTHERWISE, THE ARBITRATION WILL TAKE PLACE IN THE COUNTY OF YOUR BILLING ADDRESS. AND THE AAA'S CONSUMER ARBITRATION RULES WILL APPLY.

*Id.* at 25 (shading omitted).

Williams alleges that in April of 2024, Verizon agreed to replace his iPhone and Apple Watch, but "failed to issue either of the promised replacement devices," costing him "$1,700 out-of-pocket to purchase a new phone." ECF 1, at 2–3 ¶ 10–11. Williams also "continues to be billed for the full cost of the phone" and "Verizon now falsely claims [Williams] owes approximately $1,500." *Id.* at 3 ¶ 12–13. Williams alleges that "Verizon's false reporting and improper charges have affected [his] ability to obtain credit" and "caused him to lose financial opportunities." *Id.* ¶ 15.

In May of 2024, Williams filed suit in the District Court of Maryland for Harford County against Verizon and Asurion Insurance Services, Inc. ("Asurion"), claiming $10,000 in damages related to Verizon's failure to replace his iPhone and Apple Watch as promised. ECF 6-2, at 47–48 (state court complaint); ECF 1, at 4 ¶ 21 (alleging that Williams "filed multiple civil complaints against Verizon and others in state court"). Verizon and Asurion moved to stay and compel arbitration in that case, which was granted on August 27, 2024. ECF 6-2, at 50 (state court order

3

granting motion to compel arbitration and staying proceedings). Thereafter, Williams filed a demand for arbitration with the American Arbitration Association ("AAA"). ECF 1, at 3 ¶ 18 ("Plaintiff previously initiated arbitration with the [AAA] pursuant to" the state court's order); ECF 6-1, at 3 ¶ 11 (indicating Plaintiff filed an arbitration demand "[o]n or around August 30, 2024" and an amended demand "[o]n or about February 22, 2025"), at 67–72 (Williams' amended demand for arbitration dated February 21, 2025). With respect to Williams' Fios account, Williams alleges that he at some point "attempted to resolve issues related to" his Fios account "through mediation" until "[a] Verizon representative became aware of this lawsuit and . . . claimed their attorney would now handle the matter." ECF 1, at 3 ¶ 17.

On April 9, 2025, Williams filed his initial complaint in this Court alleging eleven causes of action, including breach of contract (Count I); fraudulent misrepresentation (Count II); negligent misrepresentation (Count III); unjust enrichment (Count IV); violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2 ("FCRA") (Count V); "violation of duty to mediate in good faith" (Count VI); "violation of duty to participate in arbitration in good faith" (Count VII); a 42 U.S.C. § 1983 claim for "retaliation and violation of access to court" (Count VIII); violation of the Maryland Consumer Protection Act, Md. Code Ann., Comm. L. § 13-301 ("MCPA") (Count IX); breach of the implied covenant of good faith and fair dealing (Count X); and "declaratory judgment" (Count XI). *Id.* at 4.

On July 14, 2025, Verizon filed a motion to dismiss or, in the alternative, to stay and compel arbitration. ECF 6. Williams responded by filing a motion to strike the declaration of Joseph Ninete, attached as an exhibit to Verizon's motion to dismiss, alleging that the declaration "contains material misrepresentations regarding the status of arbitration between the parties." ECF 9, at 1. Shortly thereafter, he filed a motion seeking a temporary restraining order ("TRO"), ECF

4

11, and a subsequent motion seeking a TRO and preliminary injunction, ECF 14, requesting the Court prevent arbitration from moving forward. Williams' motion to strike, motion for TRO, and motion for TRO and PI were all denied on August 8, 2025. *See* ECF 16. On December 18, 2025, Williams filed a motion for leave to file an amended complaint with a proposed amended complaint appended thereto. ECF 17. The amended complaint alleges nine claims including breach of contract (Count I); violation of the FCRA (Count II); violation of the MCPA (Count III); fraud/fraudulent misrepresentation (Count IV); abuse of process/procedural due process violations (Count V); negligent misrepresentation (Count VI); unjust enrichment (Count VII); breach of implied covenant of good faith and fair dealing (Count VIII); and "[d]eclaratory [r]elief" (Count IX). *Id.* at 8–11. Verizon did not file a response.

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 56

"Where, as here, the formation or validity of the arbitration agreement is in dispute, a motion to compel arbitration is treated as one for summary judgment." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (citing *Shaffer v. ACS Gov't Servs., Inc.*, 321 F.Supp.2d 682, 683 (D. Md. 2004)); *see also Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) (holding that "[t]reating a motion to compel as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute . . . or where documents outside the pleadings must be considered") (internal citations omitted). Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only

5

"genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* When considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in that party's favor. *Id.* at 255 (citation omitted). However, the Court may rely only on facts supported in the record. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The Court may not rely upon unsubstantiated assertions in the pleadings. *Id.*

### B. The Federal Arbitration Act

Under Section 2 of the Federal Arbitration Act ("FAA"), an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While Section 2 has been interpreted as "a congressional declaration of a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), the Supreme Court has been careful to clarify that "arbitration agreements [are] as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

The FAA permits a party to an arbitration agreement to seek to compel another party to submit claims to arbitration. *See* 9 U.S.C. § 4. In this regard, Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . [a] district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* The statute also provides that, when presented with such a petition, the Court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

6

But, if the "making of the arbitration agreement" is at issue, "the [C]ourt shall proceed summarily to the trial thereof." *Id.*

The Fourth Circuit has also held that the question of "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted)) (brackets in original). And so, "[t]ypically, a challenge to the validity of an arbitration clause is decided by the court." *Meena Enters., Inc. v. Mail Boxes Etc.*, Civ. No. DKC-12-1360, 2012 WL 4863695, at *5 (D. Md. Oct. 11, 2012). However, "parties to an arbitration agreement can 'agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "Thus, when an agreement 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, a court must enforce that delegation clause and send that question to arbitration." *Id.* (quoting *Rent-A-Center, W., Inc.*, 561 U.S. at 67). "However, if the claimant specifically attacks the validity of the delegation clause itself, a court may consider that clause's enforceability." *Id.* (quoting *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 455 (4th Cir. 2017)).

### C. Federal Rule of Civil Procedure 15

Courts are to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). While it is within the discretion of a district court to deny leave to amend, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S.

178, 182 (1962). Reasons that justify denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.* The Fourth Circuit has explicitly directed trial courts "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Ultimately, the decision to grant leave to amend rests in this Court's discretion. *Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (en banc).

Because Plaintiff brings this suit pro se, the Court must liberally construe his pleadings, holding them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency has its limits, though. "A court may not construct the plaintiff's legal arguments for him, nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, No. CIVA 6:08-0231-GRA, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009) (first citing *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)), *aff'd*, 368 F. App'x 361 (4th Cir. 2010).

### III. ANALYSIS

#### A. Verizon's Motion

Verizon moves to dismiss or, in the alternative, compel arbitration and stay this action pursuant to the FAA. ECF 6, at 1. The Court first addresses Verizon's request to compel arbitration.

Verizon asserts that Williams must be compelled to arbitrate because "the express terms of the Arbitration Provision clearly and unmistakably delegate to the arbitrator the determination of the validity, enforceability, or scope of the Customer Agreement, including the agreement to

arbitrate." ECF 6, at 15. Specifically, Verizon points to the following language in the customer agreements executed by Williams:

> ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT, INCLUDING THE VALIDITY, ENFORCEABILITY, OR SCOPE OF ANY PORTION OF THIS AGREEMENT (INCLUDING THE AGREEMENT TO ARBITRATE) . . . WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA")[.]

*Id.* at 16; ECF 6-2, at 25.

The Fourth Circuit has treated similarly worded provisions as delegation clauses, including ones that "tasked arbitrators with resolving 'all disputes, including the scope and validity of this Arbitration Provision,'" or "'any issue concerning the validity, enforceability, or scope of this Agreement or this Agreement to Arbitrate.'" *Mod. Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 242 (4th Cir. 2025) (first quoting *Hengle v. Treppa*, 19 F.4th 324, 332 (4th Cir. 2021); and then quoting *Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286, 290 (4th Cir. 2020)). This Court has also found delegation clauses with similar language to validly delegate questions of arbitrability to the arbitrator. For example, in *Albert v. Global Tel\*Link Corporation*, Judge Griggsby found a delegation clause affirming that "[o]nly the arbitrator is authorized to make determinations as to the scope, validity, or enforceability of this [Arbitration Agreement], including whether any dispute falls within its scope" to "broadly delegate to the arbitrator all issues regarding the scope and enforceability of the Arbitration Agreement." Civ. No. LKG-20-01936, 2025 WL 974530, at *3 (D. Md. Apr. 1, 2025); *see also Meena Enters.*, 2012 WL 4863695, at *1 (finding the delegation clauses at issue there "unequivocally delegat[ed] to the arbitrator all claims regarding the validity of the arbitration clauses" based on the language that "any . . . claims regarding *the validity, scope, and enforceability of this Section*, shall be *solely and finally settled by binding arbitration*" (emphasis in original)). Likewise, here, Williams and Verizon have agreed

to arbitrate "any dispute . . . including the validity, enforceability, or scope of any portion of this agreement (*including the agreement to arbitrate*)." ECF 6-2, at 25 (emphasis added) (capitalization omitted). Based on the express terms of the delegation provision, Williams and Verizon have agreed to delegate the question of whether the parties agreed to arbitrate to the arbitrator. *See Thornton v. Habibi*, Civ. No. PX-20-2468, 2021 WL 1856648, at *3 (D. Md. May 10, 2021) (finding assent to delegate gateway questions of arbitrability existed where the delegation clause specified that "[t]he validity of the arbitration clause shall also be resolved by binding arbitration"); *Devine v. Bethesda Softworks, LLC*, 636 F. Supp. 3d 564, 572–73 (D. Md. 2022) (finding the arbitrator was required to "decide whether the parties have agreed to arbitrate the merits of the case" where the delegation provision covered disputes regarding "*the validity, enforceability or scope*" of the arbitration agreement (emphasis in original)); *cf. Mod. Perfection, LLC v. Bank of Am., N.A.*, Civ. No. LKG-22-02103, 2023 WL 5433006, at *9 (D. Md. Aug. 22, 2023) (delegation clause valid where parties agreed to "have the arbitrator resolve issues regarding . . . the applicability of the arbitration agreement to this dispute and . . . the validity of the Deposit Agreement"), *aff'd*, 126 F.4th 235 (4th Cir. 2025).

Moreover, the arbitration clauses here state that the "AAA's consumer arbitration rules will apply." ECF 6-2, at 25 (capitalization omitted). "Courts typically find that where an arbitration agreement explicitly incorporates arbitral rules, like JAMS or AAA rules, such provisions constitute 'clear and unmistakable evidence' of intent to arbitrate arbitrability." *Gordon v. Zeroed-In Tech., LLC*, Civ. No. BAH-23-3284, 2025 WL 941365, at *20 (D. Md. Mar. 26, 2025) (quoting *Collins v. Discover Fin. Servs.*, Civ. No. PX-17-3011, 2018 WL 6434503, at *2 (D. Md. Dec. 7, 2018) (collecting cases)). That the arbitration clauses "explicitly incorporate[]" the AAA's arbitral rules further supports that the parties clearly and unmistakably "inten[ded] to arbitrate

10

arbitrability." *Id.*; *see also Collins*, 2018 WL 6434503, at *3 ("The cardmember agreements include AAA and JAMS rules which clearly state that issues of arbitrability [are] to be determined by the arbitrator."). Because Williams and Verizon agreed to delegate gateway questions of arbitrability to an arbitrator, the delegation provision must be respected unless Williams has "specifically attack[ed] the validity of the delegation clause itself." *Gibbs*, 967 F.3d at 337.

A party specifically challenging a delegation provision "must at least reference the provision in its opposition to a motion to compel arbitration." *Id.* at 338 (quoting *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226–27 (3d Cir. 2018)). Williams has not done so here. He instead argues in his motion to strike, which appears to serve as Williams' opposition to Verizon's motion, that "Mr. Nin[e]te's declaration also relies on documents bearing a forged signature and referencing transactions unrelated to the current dispute." ECF 9, at 2. Williams then attaches as exhibits copies of the signed customer agreements, asserting "[t]he signature on the document[s are] not of my own."[3] ECF 9-1, at 64–71. When "specifically challenging a delegation clause, a

---

[3] Williams also asserts in a declaration appended to his motion to strike that he "never agreed to arbitrate any dispute with Verizon," that "the documents Verizon relies on relate to an entirely separate transaction involving" devices he "returned within the contractual return period" and that Verizon has not provided "any evidence of mutual assent to arbitrate the disputes at issue in this case." ECF 9-2, at 2. "[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 104–05 (4th Cir. 2012) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010)). "Thus where a contract commits to arbitration those matters 'arising under' the agreement, we may not submit questions of contract formation to the arbitrator, as those questions cannot 'arise under' an agreement that was never validly formed." *Id.* at 105 (citing *Granite Rock*, 561 U.S. at 304–05. But a careful read of Williams' arguments reveals that he does not dispute contract *formation*, but rather whether the arbitration agreements presented by Verizon apply to the disputes at issue as they arise from a "entirely separate transaction" that he concedes he was a party to. *See* ECF 9-2, at 2 ("[T]he documents Verizon relies on relate to an entirely separate transaction involving an iPhone 14 Pro Max and an Apple Ultra Watch 2 that I returned within the contractual return period."). Moreover, if Williams were to present an argument regarding the formation of a contract with Verizon, he would be equitably estopped from denying he is bound to submit to arbitration as his claims arise from the contract containing the arbitration clause. "Equitable estoppel precludes a party from asserting rights 'he otherwise would have had

11

party may rely on the same arguments that it employs to contest the enforceability of other arbitration provisions." *Gibbs*, 967 F.3d at 338–39 (quoting *MacDonald*, 883 F.3d at 226–27. Here, however, Williams does not "mention[] the delegation provision at all in his opposition" and thus has "failed to present a viable challenge." *Id.* at 337; *see also Meena Enters.*, 2012 WL 4863695, at *6 (delegation clauses enforceable because "Plaintiff's unconscionability arguments [were] not specifically directed to the [delegation] provisions"). As such, the delegation clauses must be enforced, and all threshold questions of arbitrability must be submitted to the arbitrator.[4] *See Gibbs*, 967 F.3d at 337.

---

against another' when his own conduct renders assertion of those rights contrary to equity." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417–18 (4th Cir. 2000) (quoting *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310, 1317 (4th Cir. 1996)). Where, as here, a party asserts that they are not bound by an arbitration provision because they did not sign the agreement, "[a] nonsignatory is estopped from refusing to comply with an arbitration clause when [he] [is seeking or] receives a direct benefit from a contract containing an arbitration clause." *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 161 (4th Cir. 2004) (citing *Int'l Paper*, 206 F.3d at 418). The direct benefit test applied in the Fourth Circuit "recognizes that a nonsignatory should be estopped from denying that it is bound by an arbitration clause when its claims against the signatory 'arise from' the contract containing the arbitration clause." *Thomas v. Progressive Leasing*, Civ. No. RDB-17-1249, 2017 WL 4805235, at *3 (D. Md. Oct. 25, 2017) (quoting *Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 628 (4th Cir. 2006)). "A nonsignatory's claims 'arise from' a contract containing an arbitration provision when the claims seek to enforce rights contained in that contract." *Id.* Here, Williams purchased from Verizon an iPhone and Apple Watch under two device payment agreements, *see* ECF 6-1, at 2 (providing that Plaintiff entered into device payment agreements with Verizon for an iPhone 14 Pro Max 512 GB and Apple Watch Ultra on April 10 and 19, 2023, respectively), which incorporated the arbitration clause at issue here, *see* ECF 6-2, at 13, 17. Williams now attempts to enforce his right to obtain a replacement iPhone and Apple Watch from Verizon, ECF 1, at 2 ¶ 10 ("On or about April 4, 2024, Verizon shipped Plaintiff a replacement iPhone 15 Pro Max 512GB, agreeing to also replace his Apple Watch Ultra 2 once the phone was returned . . . Verizon failed to issue either of the promised replacement devices, leaving Plaintiff without a functioning phone."), and would accordingly be estopped from avoiding arbitration for his claims that arise from the contracts containing the arbitration clauses.

[4] Though not raised by either party, the Court observes that the customer agreements related to Williams' Verizon Wireless accounts were executed in April of 2023, two years after he allegedly held a Verizon Fios account in April of 2021. It is not clear from Williams' complaint when the disputes related to his Fios account arose, but even if prior to 2023, "temporally-broad arbitration

Verizon's motion to compel arbitration will be granted. The case will be stayed in the event the arbitrator determines that any of Williams' claims are not subject to arbitration. *See Meena Enters.*, 2012 WL 4863695, at *6 (staying so the arbitrator could decide the "gateway issue" of arbitrability). Verizon's request for dismissal of the complaint under Rule 12(b)(6) is denied as moot as the Court has compelled Williams' claims to arbitration. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("We have held that a court may not 'rule on the potential merits of the underlying' claim that is assigned by contract to an arbitrator, 'even if it appears to the court to be frivolous.'" (quoting *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649–650 (1986))); *cf. Myers v. Queens Gap Mountain, LLC*, No. 1:10CV171, 2011 WL 4102147, at *1 n.1 (W.D.N.C. Sept. 14, 2011) (denying as moot one defendant's motion to dismiss because plaintiffs were compelled to submit claims to arbitration).

### B. Williams' Motion to Amend

Williams moves to file an amended complaint to "refine[] existing allegations, update[] the factual record to reflect ongoing harm, and conform[] the pleadings to developments that occurred after the original filing." ECF 17, at 2. As Williams seeks to not only amend but also to supplement his pleading with alleged acts that happened after the original complaint was filed, *see* ECF 17-1, at 7–8 (alleging acts that occurred from May of 2025 forward), Federal Rule of Civil Procedure 15(d) is relevant. Rule 15(d) governs supplemental pleadings, allowing a party to serve

---

provisions may be retroactively applied to causes of action that accrued prior to the execution of the arbitration agreement." *Newbanks v. Cellular Sales of Knoxville, Inc.*, 548 F. App'x 851, 856 (4th Cir. 2013). Here, the parties have delegated the question of scope to the arbitrator, including as related to "any . . . products and services [Williams] receive[d] from [Verizon]." *See* ECF 6-2, at 25. As such, whether the arbitration clauses in Williams' customer agreement covers his disputes related to his Fios account must also be sent to the arbitrator. *See, e.g., Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 937 (S.D. Cal. 2022) (where there is a valid delegation clause, "[w]hether the arbitration agreement applies retroactively is a matter that should be decided by the arbitrator, not the Court").

a supplemental pleading setting out "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Regardless, "[t]h[e] distinction [between supplemental and amended pleadings] is of little practical significance . . . because the standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical." *Franks v. Ross*, 313 F.3d 184, 198 (4th Cir. 2002). As noted, Fed. R. Civ. P. 15(a)(2) advises "[t]he court [to] freely give leave [to amend] when justice so requires." The Supreme Court has held that:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given.

*Foman*, 371 U.S. at 182 (citation omitted); *see also Mayor & City Council of Baltimore v. Trump*, Civ. No. ELH-18-3636, 2020 WL 958554, at *2 (D. Md. Feb. 27, 2020) ("In light of Rule 15(d)'s salutary purpose, supplementation of pleadings is favored and should be granted absent undue delay, bad faith, dilatory tactics, or unfair prejudice to the party to be served with the proposed pleading.").

Amendment or supplementation is not required if it would be futile. *See Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) ("A district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules.") (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (internal quotation marks omitted)). A proposed amendment is futile when it "is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986); *see also* 6 Arthur R. Miller, et al., Federal Practice and Procedure § 1487 (3d. ed. 2010) ("[A] proposed amendment that clearly is frivolous,

14

advancing a claim or defense that is legally insufficient on its face, or that fails to include allegations to cure defects in the original pleading, should be denied." (footnotes omitted)). This review for futility "does not involve 'an evaluation of the underlying merits of the case.'" *Kolb v. ACRA Control, Ltd.*, 21 F. Supp. 3d 515, 522 (D. Md. 2014) (quoting *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, Civ. No. RDB-12-2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013)). "To the contrary, '[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.'" *Next Generation Grp., LLC v. Sylvan Learning Ctrs., LLC*, Civ. No. CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)) (alterations in *Next Generation Grp., LLC*).

The proposed amended complaint revises facts previously set forth in the initial complaint, ECF 17-1, at 3 (adding the account numbers for Williams' Fios and Wireless accounts), includes new allegations about Williams' recent demand for arbitration against Verizon, *id.* at 6–7, and revises the claims to remove certain causes of action and add one new claim, *id.* at 8–11. However, amendment would be futile as none of the proposed amendments alter the Court's conclusion that arbitration is required here. As the parties have delegated the threshold issue of arbitrability, regardless of any amendment to pleadings, Williams is still required to submit any claims to the arbitrator. Accordingly, leave to amend will be denied as it is futile. *Cf. Taylor v. Shutterfly, Inc.*, No. 18-CV-00266-BLF, 2018 WL 4334770, at *8 (N.D. Cal. Sept. 11, 2018) (amendment was futile because if the plaintiff "were to amend her complaint, she would be compelled to submit her claims to the arbitrator to determine whether those claims are subject to arbitration"); *Adkins v. Labor Ready Inc.*, 205 F.R.D. 460, 465 (S.D.W. Va. 2001) (finding that where claims being added

15

by proposed amendment to the pleading are subject to arbitration, the proposed amendment is futile); *but cf. Alston v. Navy Fed. Credit Union*, Civ. No. GJH-21-00040, 2021 WL 4478698, at *10 (D. Md. Sept. 30, 2021) (amendment not futile because, among other reasons, "Plaintiff's claims are not clearly subject to a mandatory arbitration provision").

## IV. CONCLUSION

For the foregoing reasons, Verizon's motion is **GRANTED** in part and **DENIED** in part, and this case is **STAYED** pending arbitration. The parties are to file a joint status report in 180 days advising the Court of the status of the arbitration proceeding. Williams' motion for leave to file an amended complaint is **DENIED** without prejudice.

A separate implementing order will issue.

Dated: February 10, 2026

/s/
Brendan A. Hurson
United States District Judge